**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Gissing North America LLC, a Delaware limited liability company, *et al.*, | Case No. 22-46160 |
| | Hon. |
| Debtors.[1] | (Jointly Administered) |

**INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 361, 362, 363 AND 364 AND FEDERAL BANKRUPTCY RULES 2002, 4001, 6004, 9006, AND 9014: (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING AND USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) AUTHORIZING AND APPROVING ACCOMMODATION AND ACCESS AGREEMENTS; (IV) MODIFYING THE AUTOMATIC STAY; (V) SETTING FINAL HEARING; AND (VI) GRANTING RELATED RELIEF**

---

[1] Debtors' cases are being jointly administered for procedural purposes only and include Debtors Gissing North America LLC, Case No. 22-\_\_\_\_\_-\_\_\_, Gissing Sidney LLC, Case No. 22-\_\_\_\_\_-\_\_\_, Gissing Technologies LLC, Case No. 22-\_\_\_\_\_-\_\_\_, Gissing Technologies Mexico LLC, Case No. 22-\_\_\_\_\_-\_\_\_, Gissing Auburn LLC, Case No. 22-\_\_\_\_\_-\_\_\_, Gissing Sumter LLC, Case No. 22-\_\_\_\_\_-\_\_\_, Gissing Fremont LLC, Case No. 22-\_\_\_\_\_-\_\_\_, and Gissing Greenville LLC, Case No. 22-\_\_\_\_\_-\_\_\_.

This matter came before the Court for hearing on August __, 2022 at __:__ _.M. (the "**Interim Hearing**") on the Emergency First-Day Motion of the Debtors for Interim and Final Orders: (1) Authorizing the Debtors to Obtain Secured Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363(b), 363(c), 363(e), 364(c), 364(d)(1) and 364(e) and Federal Bankruptcy Rules 2002, 4001, 6004, 9006, and 9014; (2) Granting Adequate Protection; (3) Authorizing and Approving Accommodation and Access Agreements; (4) Modifying the Automatic Stay; (5) Scheduling and Approving the Form and Method of Notice of Final Hearing; and (6) Granting Related Relief (the "**Motion**"), filed by the debtors and debtors-in-possession (the "**Debtors**") in the Debtors' chapter 11 cases (the "**Cases**"); the Debtors having each filed a voluntary petition for reorganization pursuant to chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"), on August 8, 2022 (the "**Petition Date**"), and having requested in the Motion entry of interim and final orders:

(1)     authorizing and approving, pursuant to section 364(c) and (d) of the Bankruptcy Code, the Debtors to obtain debtor-in-possession financing from the DIP Lenders (as defined herein) pursuant to the terms and conditions of (a) this Interim Order and any Final Order (as defined herein), (b) the Debtor in Possession Credit Agreement dated August 8, 2022, by and among the Debtors, and the lenders referenced therein (the "**DIP Loan Agreement**"), the Loan Documents (as defined

in the DIP Loan Agreement) and all ancillary documents, instruments, agreements, including the Accommodation Agreement and Access Agreement (each defined below), and writings referred to in this Interim Order, the DIP Loan Agreement or any final order and/or required to be executed by the Debtors in connection therewith (collectively, the "**DIP Financing Documents**"), and (c) the budget attached to the Motion as Exhibit 6a (the "**Budget**") (collectively, the "**DIP Credit Facility**");

(2)     in connection with the DIP Loan Agreement, pursuant to Bankruptcy Code section 363(b), authorizing and approving the Accommodation Agreement and the Access Agreement (each defined below), requiring Debtors to perform their obligations thereunder, and providing that the obligations of the Debtors thereunder constitute valid, postpetition obligations;

(3)     authorizing and approving, pursuant to sections 361 and 363(c) of the Bankruptcy Code, the Debtors' use of Cash Collateral (as defined herein) of the Prepetition Lenders (as defined herein) in accordance with the provisions of this Interim Order;

(4)     granting the Prepetition Lenders adequate protection, including, without limitation, (a) adequate protection against the diminution in the value or amount of the Prepetition Collateral (as defined herein), including certain payments as described below, (b) Replacement Liens (as defined herein), and (c) administrative expense claims under sections 503 and 507(b) of the Bankruptcy

Code, such Replacement Liens and sections 503 and 507(b) administrative expense claims to be subject to the Carve-Out (as defined herein) and the liens, security interests and superpriority treatment granted to the DIP Lenders, as more particularly set forth herein;

(4)     Authorizing the Debtors, subject to the Carve-Out, and only effective upon entry of the Final Order granting such relief, to prohibit surcharging of Collateral pursuant to section 506(c) of the Bankruptcy Code;

(5)     Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement the provisions of the DIP Financing Documents and this Interim Order; and

(6)     Granting any further and related relief as the Court deems just and equitable.

Upon the record of the Cases and the record of the Interim Hearing, good and sufficient cause appearing therefor, and it appearing to be in the best interests of the Debtors' estates and creditors:

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW ON AN INTERIM BASIS FOR PURPOSES OF ENTERING THIS INTERIM ORDER:

A.     On the Petition Date, the Debtors each filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

Eastern District of Michigan (the "**Bankruptcy Court**"). The Debtors are continuing in the management and possession of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B. Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

C. Sufficient and adequate notice of the Motion has been provided under the urgent circumstances present and based upon the notice sent to the Interim Noticed Parties (defined below), pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d), 6004, and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b), 364(c) and 364(d) of the Bankruptcy Code, and no further notice of, or interim or preliminary hearing on, the Motion or this Interim Order is necessary or required.

D. The Huntington National Bank, a national banking association, (in its capacity as Agent and Collateral Agent (the "**DIP Agent**"), and a lender under the DIP Credit Facility, and together with any other entities that are a lender (the "**DIP Lenders**") are willing to advance monies to the Debtors, and the Prepetition Lenders are willing to consent to the use of Cash Collateral, only upon the terms and conditions contained in this Interim Order. General Motors LLC ("**GM**") and Tesla,

Inc. ("**Tesla**") have agreed to purchase subordinated participations in the DIP Credit Facility in accordance with the terms of the Subordinated Participation Agreements (defined below).

E.  The Debtors, Huntington National Bank, a national banking association, (in its capacity as agent and collateral agent, Prepetition Lenders, and GM, Toyota Motor Engineering & Manufacturing North America, Inc. ("**Toyota**"), and BMW SLP S.A. de C.V. ("**BMW**") are parties to the certain Accommodation Agreement dated July 18, 2022 as modified by Tesla's Joinder to Accommodation Agreement and Access Agreement dated as of July 29, 2022, by and among, the Prepetition Borrowers, Agent, the Prepetition Lenders, GM, Toyota, BMW, and Tesla (a copy of which is attached as Exhibit 6b to the Motion, the "**Accommodation Agreement**") and related Access and Security Agreement dated July 18, 2022 (a copy of which is attached as Exhibit 6b to the Motion, the "**Access Agreement**") pursuant to which the parties outlined the terms of the financial accommodations to be provided by certain customers of the Debtors.  It is a condition precedent to the DIP Financing Documents that the Accommodation Agreement and Access Agreement be approved by the Court as requested in the Motion and constitute DIP Financing Documents under this Interim Order. GM, Toyota, BMW, and Tesla, as parties to the Accommodation Agreement and Access Agreement, are referred to herein as the "**Accommodating Customers**."

F. The Debtors are unable to obtain sufficient levels of unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code to maintain and conduct their businesses.

G. The Debtors are unable to obtain the necessary financing as unsecured credit allowable under section 364(a), (b) or (c)(1) of the Bankruptcy Code or as secured credit pursuant only to section 364(c)(2) and (3). Additionally, the Debtors are unable to procure the necessary financing on more favorable terms than those offered by the DIP Lenders or provided in this Interim Order.

H. The credit and financial accommodations to be extended under the DIP Credit Facility are being extended by the DIP Lenders in good faith; the conditions required by the Prepetition Lenders in connection with the use of Cash Collateral are made in good faith; the Debtors, the DIP Lenders and the Prepetition Lenders (collectively, the "**Lenders**") have negotiated the terms and conditions contained in this Interim Order in an arms' length, open and honest fashion; and the Lenders are entitled to the protection of section 364(e) of the Bankruptcy Code.

I. It is in the best interests of the Debtors' creditors and their estates that they be allowed to finance their operations under the terms and conditions set forth herein.

J. Notice of the relief sought by the Motion, and the Interim Hearing with respect thereto, pursuant to Bankruptcy Rules 2002 and 4001(b), (c) and (d) and

Bankruptcy Code section 102(1), as required by Bankruptcy Code sections 363(b), 364(c) and (d), has been given to the following parties in interest: the United States Trustee; the DIP Lenders; the Prepetition Lenders; all other creditors with UCC filings against the Debtors; GM, Toyota, BMW and Tesla (each as defined in the DIP Loan Agreement); the creditors holding the twenty (20) largest unsecured claims against the Debtors' estates; the Internal Revenue Service; and all state and local taxing authorities concerning the Debtors (collectively, the "**Interim Noticed Parties**").

K.  After consultation with their counsel and financial advisors, but without prejudice to the rights of parties in interest as set forth in paragraph 15 below, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs K(i) through K(vi) hereof shall be referred to herein as the "**Debtors' Stipulations**"):

(i)  **Prepetition Obligations.**

(a)  <u>Obligations under the Prepetition Credit Agreement</u>. As of the Petition Date, the Debtors, and non-debtors Conform Automotive, LLC, a Michigan limited liability company ("**Conform**") and DTI Molded Products, Inc., a Michigan corporation ("**DTI**")[2], were parties to that certain Fifth Amended and Restated Credit and Security Agreement, dated as of June 18, 2019, as amended by

_____

[2] Neither Conform nor DTI are released from any of their respective Prepetition Obligations under the Prepetition Loan Documents.

that certain First Amendment to Fifth Amended and Restated Credit and Security Agreement dated as of November 25, 2019, as further amended by that certain Second Amendment to Fifth Amended and Restated Credit and Security Agreement dated as of March 31, 2020, as further amended by that certain Third Amendment to Fifth Amended and Restated Credit and Security Agreement dated as of October 2, 2020, as further amended by that certain Fourth Amendment to Fifth Amended and Restated Credit and Security Agreement dated as of March 8, 2021, as further amended by that certain Fifth Amendment to Fifth Amended and Restated Credit and Security Agreement dated as of August 13, 2021, as further amended by that certain Sixth Amendment to Fifth Amended and Restated Credit and Security Agreement dated as of September 28, 2021, as further amended by that certain Seventh Amendment to Fifth Amended and Restated Credit and Security Agreement dated as of October 29, 2021, as the same was amended, amended and restated or modified from time to time by the Forbearance Agreements (defined below) or otherwise (the "**Prepetition Credit Agreement**"), among the Debtors, Conform and DTI, as borrowers (the "**Prepetition Borrowers**"), The Huntington National Bank, a national banking association, in its capacity as agent ("**Prepetition Agent**" and together with the DIP Agent, "**Agents**"), for itself and the other financial institutions and parties from time to time as lenders, together with their successors and assigns party to the Prepetition Credit Agreement (the "**Prepetition Lenders**"). Pursuant to

the Prepetition Credit Agreement, the Prepetition Lenders provided the Prepetition Borrowers with a revolving credit facility (the "**Revolving Facility**") in the aggregate principal amount of up to $22,000,000. As of the Petition Date, the outstanding unpaid balance under the Revolving Facility was at least $13,661,253.21, which includes an Over-Formula Advance Amount (as defined in the DIP Loan Agreement) funded by GM and Tesla in the amount of $9,764,020. Also pursuant to the Prepetition Credit Agreement, the Prepetition Lenders provided the Prepetition Borrowers with an equipment term loan (the "**Equipment Term Facility**") on or about October 29, 2021 in the amount of $5,325,000.00. As of the Petition Date, the outstanding unpaid balance under the Equipment Term Facility was at least $4,350,000.00. Also pursuant to the Prepetition Credit Agreement, the Prepetition Lenders provided the Prepetition Borrowers with a real estate term loan (the "**Real Estate Term Facility**") on October 29, 2021 in the amount of $6,458,333.25. As of the Petition Date, the outstanding balance under the Real Estate Term Facility was at least $5,916,666.55. Also pursuant to the Prepetition Credit Agreement, the Prepetition Lenders provided the Prepetition Borrowers with a capital expenditure loan (the "**CapEx Loan**") on October 29, 2021 in the amount of $515,348.64. As of the Petition Date, the outstanding balance under the CapEx Loan was at least $439,562.04. Also pursuant to the Prepetition Credit Agreement, the Prepetition Lenders provided the Prepetition Borrowers with a second capital

expenditure loan (the **"Second CapEx Loan"**) on October 29, 2021 in the amount of $784,954.18. As of the Petition Date, the outstanding balance under the Second CapEx Loan was at least $686,834.88.

(b)     <u>Forbearance Agreements</u>. As a result of the occurrence of certain defaults under the Prepetition Credit Agreement, the Prepetition Borrowers, Prepetition Agent and the Prepetition Lenders entered into that certain Forbearance Agreement dated as of November 30, 2021, as amended that certain First Amendment to Forbearance Agreement dated as of December 31, 2021, as further amended by that certain Second Amendment to Forbearance Agreement dated as of January 26, 2022, as further amended by that certain Third Amendment to Forbearance Agreement dated as of February 28, 2022, as further amended by that certain Fourth Amendment to Forbearance Agreement dated as of March 31, 2022, as further amended by that certain Fifth Amendment to Forbearance Agreement dated as of April 29, 2022, as further amended by that certain Sixth Amendment to Forbearance Agreement dated as of May 31, 2022, as further amended by that certain Seventh Amendment to Forbearance Agreement dated as of June 9, 2022, as further amended by that certain Eighth Amendment to Forbearance Agreement dated as of June 30, 2022, as further amended by that certain Ninth Amendment to Forbearance Agreement dated as of July 11, 2022, as further amended by that certain Tenth Amendment to Forbearance Agreement dated as of July 18, 2022, as further

amended by that certain Eleventh Amendment to Forbearance Agreement dated as of August 4, 2022 (as the same have been amended and in effect from time to time prior to the Petition Date, collectively, the **"Forbearance Agreements"**).

(ii) <u>**Security**</u>. Pursuant to the Prepetition Credit Agreement and other collateral documents and agreements, the Prepetition Borrowers granted to the Prepetition Agent to secure the prompt payment and performance of the Obligations (as defined in the Prepetition Credit Agreement), a first-priority valid, perfected and enforceable lien on and continuing security interest in the Collateral (as defined in the Prepetition Credit Agreement) (the "**Prepetition Collateral**"). The Prepetition Collateral consists of all of the Prepetition Borrowers' assets, tangible and intangible, and real and personal. Pursuant to any Mortgage (as defined in the DIP Loan Agreement, collectively, the "**Prepetition Mortgages**"), from the applicable Debtors in favor of the Prepetition Agent, the applicable Debtors have mortgaged to the Prepetition Agent all of their respective rights, title and interests in and to their owned real property described in the Prepetition Mortgages (the "**Mortgaged Property**"). The Prepetition Mortgages secure the performance of the covenants and agreements contained in the Prepetition Mortgages, the Prepetition Credit Agreement and the other Loan Documents (as defined in the Prepetition Credit Agreement) and secures the payment when due of (a) the obligations of the Prepetition Borrowers under the Prepetition Credit Agreement and the Notes (as

defined in the Prepetition Credit Agreement), together with applicable interest, (b) all amounts expended or advanced by the Prepetition Agent or the Prepetition Lenders pursuant to any Loan Document and (c) all unpaid advances made by the Prepetition Agent or the Prepetition Lenders, with respect to the Mortgaged Property, for the payment of taxes, assessments, insurance premiums and all other liabilities and indebtedness owing by the Prepetition Borrowers to the Prepetition Agent or the Prepetition Lenders.  The liens, security interests and/or mortgages granted by the Prepetition Borrowers to the Prepetition Agent prior to the Petition Date, including, without limitation the liens, security interests and mortgages granted in the Prepetition Credit Agreement and the Prepetition Mortgages, are referred to herein as the "**Prepetition Liens**."

(iii) **Subordinated Participation Agreements**. Prior to the Petition Date, and in addition to other advances and financial accommodations made by the Prepetition Lenders to the Prepetition Borrowers under the Prepetition Credit Agreement (a) GM, for itself and on behalf of its subsidiaries and affiliates, executed and delivered to the Prepetition Lenders that certain Second Amended and Restated Subordinated Last-Out Participation Agreement dated as of July 18, 2022, (as amended, restated, modified or supplemented from time to time prior to the Petition Date, the "**GM Subordinated Participation Agreement**"), pursuant to which GM purchased from the Prepetition Lenders a last-out, non-voting, subordinated

participation in the Prepetition Obligations, and agreed to purchase from the DIP Lenders a last-out, non-voting, subordinated participation in the Postpetition Obligations, and (b) Tesla, for itself and on behalf of its subsidiaries and affiliates (together with GM, the "**Subordinated Participants**"), executed and delivered to the Prepetition Lenders that certain Subordinated Last-Out Participation Agreement dated as of July 29, 2022, (as amended, restated, modified or supplemented from time to time prior to the Petition Date, the "**Tesla Subordinated Participation Agreement**" and together with the GM Subordinated Participation Agreement, the "**Subordinated Participation Agreements**"), pursuant to which Tesla purchased from the Prepetition Lenders a last-out, non-voting, subordinated participation in the Prepetition Obligations, and agreed to purchase from the DIP Lenders a last-out, non-voting, subordinated participation in the Postpetition Obligations, and Prepetition Lenders made the Over-Formula Advance Amount (which includes the SOFA Amount, the Second SOFA Amount, the Third SOFA Amount and the Tesla SOFA amount, all as defined in the DIP Loan Agreement) available to the Prepetition Borrowers. The Subordinated Participation Agreements were executed and delivered by the Subordinated Participants in connection with the Accommodation Agreement.

      (iv)   **<u>Validity and Priority of Prepetition Liens and Prepetition Obligations</u>**.   (a) The Prepetition Liens are not subject to avoidance,

recharacterization or subordination pursuant to the Bankruptcy Code or otherwise. The Prepetition Borrowers' indebtedness and other obligations, as of the Petition Date, to the Prepetition Lenders, including, without limitation, the Obligations under the Prepetition Credit Agreement and the obligations under the Loan Documents (as defined in the Prepetition Credit Agreement) (collectively, the "**Prepetition Obligations**"), constitute legal, valid, binding and non-avoidable obligations of the Prepetition Borrowers that, except for the stay of enforcement arising from section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the Loan Documents, as defined in the Prepetition Credit Agreement and including the Forbearance Agreements, and the other related agreements, documents and instruments executed and delivered in connection therewith (collectively, the "**Prepetition Loan Documents**"). No offsets, defenses, challenges, claims, or counterclaims of any kind or nature to any of the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to avoidance, reduction, disallowance, disgorgement, counterclaim, recharacterization, surcharge, or subordination pursuant to the Bankruptcy Code or otherwise. The Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action, and/or choses in action, including, without limitation, claims under chapter 5 of the Bankruptcy Code, against the Prepetition Lenders and/or their respective affiliates,

agents, attorneys, advisors, professionals, officers, directors or employees, whether arising under applicable state or federal law.

(v) **Cash Collateral**.  All of the Debtors' cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents, whether original collateral or proceeds, products, rents or profits of other Prepetition Collateral or the proceeds thereof (the "**Cash Collateral**"), constitute "cash collateral," as such term is defined in Bankruptcy Code section 363(a), of the Prepetition Agent for the benefit of the Prepetition Lenders.

(vi) **Release**.  In consideration for the agreement of Agents and Lenders to entry of this Interim Order, the Debtors and any Guarantors (each, a "**Releasing Party**") fully and forever remise, release and discharge Agent, Lenders, Subordinated Participants (solely in their capacity as Subordinated Participants), and each and all of their respective parent, subsidiary and affiliated corporations, companies and divisions, together with their predecessors, successors and assigns, and each and all of their directors, officers, employees, attorneys, accountants, consultants and other agents (collectively, "**Releasees**"), of and from any and all claims, demands, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, costs, expenses, accounts, damages, judgments, losses, liabilities and defenses, of whatsoever kind or nature, in law, equity or otherwise, whether known or unknown, whether concealed or hidden, which any Releasing

Party has had, may have had or now has, or which any of its predecessors, successors or assigns hereafter can, shall or may have, for or by reason of any matter, cause or thing whatsoever, whenever arising, to and including the date this Interim Order is entered, including without limitation (a) claims arising from or in any way related to this Interim Order, the Prepetition Obligations, the Prepetition Loan Documents, the Postpetition Obligations, the DIP Financing Documents, or the business relationship among Debtors, Guarantors (if any), Agents, Lenders and Subordinated Participants (solely in their capacity as Subordinated Participants), and (b) claims under the avoidance provisions of §§ 544, 547, 548, 549 and 550 of the Bankruptcy Code.

L.     The Debtors represent, based upon the pleadings and proceedings of record, as follows:

(i)     that without the use of Cash Collateral and the financing proposed by the Motion, the Debtors will not have the funds necessary to pay postpetition payroll, payroll taxes, trade vendors, suppliers, overhead and other expenses necessary for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and properties;

(ii)     the Debtors have requested that pursuant to this Interim Order, the Prepetition Lenders make available to the Debtors Cash Collateral, and pursuant to the DIP Credit Facility, the DIP Lenders make loans and advances

and provide other financial accommodations to the Debtors, to be used by the Debtors solely for the purposes set forth in the Budget;

(iii)    the ability of the Debtors to continue their businesses and reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtors obtaining such financial accommodations from the Prepetition Lenders and the DIP Lenders and the Prepetition Lenders' consent to the use of Cash Collateral, and the DIP Lenders are willing to make such loans and advances and provide such other financial accommodations on a secured basis, as more particularly described herein, solely in accordance with this Interim Order and pursuant to the terms and conditions of the DIP Credit Facility;

(iv)    the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtors' businesses, the management and preservation of their assets and properties, and is in the best interests of the Debtors, their estates and creditors;

(v)    in addition, the use of Cash Collateral and the financing proposed by the Motion will permit the Debtors to preserve the enterprise value of their businesses while they effectively market such businesses and/or their various assets to determine the propriety of the sale thereof;

(vi)    they are unable to obtain the necessary financing as unsecured credit allowable under section 364(a), (b) or (c)(1) of the Bankruptcy Code or as secured credit pursuant only to section 364(c)(2) and (3), and that they are unable to procure the necessary financing on more favorable terms than those offered by the DIP Lenders or provided in this Interim Order;

(vii)    the terms and conditions contained in this Interim Order governing the use of Cash Collateral and the DIP Credit Facility, pursuant to which the postpetition loans, advances, and other credit and financial accommodations will be made or provided to the Debtors by the DIP Lenders, have been negotiated honestly, openly and at arms' length and in good faith, and, thus, in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors;

(viii)  the DIP Lenders are extending financing to the Debtors in good faith and the DIP Lenders are entitled to the benefits of the provisions of section 364(e) of the Bankruptcy Code; and

(ix)    the relief requested by the Motion is necessary to avoid immediate and irreparable harm to their estates.

M.    Debtors also obtained certain loans from Tesla prior to the Petition Date, $5,700,000 of which loans (the "**Tesla Obligations**") are secured by liens (the

"**Tesla Liens**") on substantially all assets of Debtors (the "**Tesla Collateral**"), as set forth in that certain Second Lien Security Agreement dated as of July 29, 2022. The Tesla Liens are subordinated to the Prepetition Liens granted to the Prepetition Agent and to the DIP Liens under the terms of a Subordination Agreement dated as of July 29, 2022.

N.     The Prepetition Lenders have consented, based on the adequate protection provided in this Interim Order, to (i) the financing arrangements contemplated by this Interim Order and the DIP Credit Facility and (ii) the Debtors' proposed use of Cash Collateral, on the terms and conditions set forth in the Interim Order and the DIP Financing Documents.

O.     The adequate protection provided to the Prepetition Lenders and to Tesla for any diminution in the value of the Prepetition Collateral or the Tesla Collateral, respectively, from and after the Petition Date pursuant to the provisions of this Interim Order is consistent with and authorized by the Bankruptcy Code and is offered by the Debtors to protect the Prepetition Lenders' interests in the Prepetition Collateral and Tesla's interests in the Tesla Collateral in accordance with sections 361, 362, and 363 of the Bankruptcy Code.

P.     The Debtors stipulate and the Bankruptcy Court finds that in making decisions to advance loans to the Debtors and in permitting use of their Cash Collateral, or in taking any other action permitted under this Interim Order, the DIP

Financing Documents, or the Budget, the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

Q.    Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion, and the immediate entry of this Interim Order, and such entry is necessary to prevent irreparable harm to the Debtors' estates.  To the extent any objections were made to the relief sought in the Motion and the entry of this Interim Order (and not withdrawn prior to the entry of this Interim Order) such objections are hereby overruled.

R.    In light of the subordination of their liens and super-priority administrative claims (i) in the case of the DIP Lenders to the Carve-Out, and (ii) in the case of the Prepetition Lenders to the Carve-Out and the DIP Liens, the DIP Lenders and the Prepetition Lenders are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

S.    As of the date hereof, the Office of the United States Trustee has not appointed an official committee of unsecured creditors (a "**Committee**") under section 1102 of the Bankruptcy Code.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.  Motion Granted.  The Motion is GRANTED as set forth herein.

2.  <u>Authorization to Obtain Debtor-in-Possession Financing</u>. The Debtors are hereby authorized and empowered to immediately borrow and obtain Loans (as defined in the DIP Loan Agreement) and to incur indebtedness and obligations to the DIP Lenders pursuant to the terms and conditions of this Interim Order and the DIP Financing Documents. The Debtors are hereby authorized and directed to enter into, execute, deliver, perform and comply with all of the terms, conditions and covenants of the DIP Loan Agreement, the other DIP Financing Documents, the Prepetition Loan Documents, and all other agreements, documents and instruments executed and/or delivered in connection with or related to the DIP Loan Agreement, including, without limitation the Subordinated Participation Agreements executed and delivered by the Subordinated Participants; *provided, however,* that to the extent that the Prepetition Loan Documents require the Debtors to make payments on account of obligations that arose prior to the Petition Date (other than (a) payments in respect of the Prepetition Obligations in accordance with the DIP Loan Agreement and this Interim Order), and (b) payments that the Debtors are obligated to make by law, taking into account applicable bankruptcy law) in order to be in compliance therewith, the Debtors are not required to make any such payments and shall not make any such payments absent an order of this Court permitting such payments. The DIP Loan Agreement and the other DIP Financing Documents and each term, condition and covenant set forth therein are approved and shall be deemed to be

incorporated into the terms and conditions of this Interim Order. All of such terms, conditions, and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and among the Debtors, the DIP Agent and the DIP Lenders and of the Debtors' assumption and adoption of all of the terms, conditions, and covenants of the DIP Financing Documents for all purposes, including, without limitation, to the extent applicable, the payment of all Prepetition Obligations (to the extent authorized by this Interim Order) and Postpetition Obligations (as defined herein) arising thereunder, including, without limitation, all principal, interest, fees and expenses, including, without limitation, all of the DIP Agent's and the DIP Lenders' reasonable attorneys' fees and legal expenses, as more fully set forth in the DIP Loan Agreement, all of which such fees and expenses shall be paid on demand but not less frequently than monthly. All unpaid fees, costs, and expenses of the DIP Agent and the DIP Lenders shall be secured by the Postpetition Collateral (defined below) and afforded all of the protections and priorities afforded to the Postpetition Obligations under this Interim Order and the DIP Financing Documents. The rate of interest to be charged for the DIP Loans and other extensions of credit to the Debtors pursuant to the DIP Loan Agreement shall be the rates set forth in the DIP Loan Agreement and shall be payable at the time set forth in the DIP Loan Agreement. In no event shall the total of the Loans exceed the Total Commitment (as defined in the DIP Loan Agreement). On the date of entry of this

Interim Order, Debtors shall pay to the DIP Agent a one percent (1%) DIP commitment fee in the amount of $300,000. Such DIP commitment fee is fully earned upon receipt by the DIP Agent and is nonrefundable.

3. Approval of Accommodation Agreement and Access Agreement. The Accommodation Agreement and Access Agreement are authorized and approved under section 363(b) of the Bankruptcy Code, and are deemed reaffirmed, ratified, and remade by the Debtors as postpetition agreements, and Debtors are required to perform their obligations thereunder, all of which obligations of Debtors constitute valid postpetition obligations. For clarity, the defined term "Loan Documents" in the Accommodation Agreement and Access Agreement includes the DIP Financing Documents, the defined term "Lending Group" in the Accommodation Agreement includes the DIP Agent and DIP Lenders, and the commencement of the Cases shall not constitute an "Event of Default" (as defined in the Accommodation Agreement).

4. Amendment. Subject to the terms and conditions of the DIP Loan Agreement and the other DIP Financing Documents, the DIP Agent, the DIP Lenders and the Debtors may amend, modify, supplement, or waive any provision of the DIP Loan Agreement (an "**Amendment**") without further approval or order of the Court so long as (a) such Amendment is not material (for purposes hereof, a "material" Amendment shall mean any Amendment that operates to increase the rate of interest other than as currently provided in the DIP Loan Agreement, adds specific

new events of default or enlarges the nature and extent of default remedies available to the Lenders following an event of default, or otherwise modifies any terms or conditions in any DIP Financing Document in a manner materially less favorable to the Debtors and in the good faith judgment of the DIP Agent, the DIP Lenders and Debtors), (b) the Debtors provide at least three business days' prior written notice of the Amendment (the "**Amendment Notice**") to the United States Trustee and counsel for any Committee and file the Amendment Notice with the Court, and (c) no objection to the Amendment is filed with the Court within two (2) business days after the date the Amendment Notice is filed with the Court. Any material Amendment to the DIP Loan Agreement must be approved by the Court to be effective.

5. <u>Payment of Prepetition Debt</u>. The Debtors are authorized to pay the Prepetition Lenders on account of the Prepetition Obligations in accordance with the DIP Financing Documents as approved by this Interim Order. The Debtors are authorized and directed to make all payments and transfers of property to the Lenders as provided, permitted, or required under the DIP Financing Documents, which payments and transfers shall not be avoidable or recoverable from the Lenders or give rise to any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law, or otherwise, unless such payments or transfers are on account of Prepetition Obligations and successfully challenged in

accordance with paragraph 15 below; *provided, however* that the roll-up of a portion of the Prepetition Obligations as authorized under this Interim Order shall not, in and of itself, create a basis upon which a claim, cause of action or objection may be made under paragraph 15 hereof or otherwise. The Lenders shall apply the proceeds of the Collateral (as defined below), including all net proceeds received by the Debtors or the Lenders at or after the closing of the sale process (as described in the Motion) (the "**363 Sale Proceeds**"), or any other amounts or payments received by the Lenders in respect of the Postpetition Obligations or Prepetition Obligations in accordance with the DIP Financing Documents. Without limiting the generality of the foregoing, the Debtors are authorized and directed, without further order of this Court, to pay or reimburse the Prepetition Agent, the DIP Agent and Lenders when due for all present and future costs and expenses, including, without limitation, all reasonable professional fees and reasonable legal expenses, paid or incurred by the Prepetition Agent, the DIP Agent or the Lenders in connection with the financing transactions as provided in this Interim Order and the DIP Financing Documents (payable on demand, but not less frequently than monthly), all of which shall be and are included as part of the principal amount of the Obligations and shall be secured by the Collateral.

6. <u>Continuation of Prepetition Procedures</u>. All pre-Petition Date practices and procedures for the payment and collection of proceeds of the Prepetition

Collateral, the turnover of cash, and delivery of property to the Lenders, and the funding pursuant to the DIP Financing Documents, are hereby approved and shall continue without interruption after the commencement of the Cases. Under no circumstances will there be any further advances under the prepetition Notes (as defined in the Prepetition Credit Agreement). All payments of accounts for inventory sold in the ordinary course of business will be applied to the Revolving Note (as defined in the Prepetition Credit Agreement) until paid in full, and thereafter to the Revolving Credit Note (as defined in the DIP Loan Agreement). Any other payments may be applied by Agent in accordance with the DIP Loan Agreement. Except as modified by this Interim Order and application of the Bankruptcy Code, all of the provisions of the Prepetition Loan Documents are ratified and confirmed. As set forth in the DIP Loan Agreement, Mandatory Prepayments (as defined the DIP Loan Agreement) shall be paid by the Debtors to the DIP Agent to be applied to the following: (i) first, to the then outstanding balance of the term loans under the Prepetition Credit Agreement (in such order, as among the various term loans, as determined by the DIP Agent in its sole discretion); (ii) second, to the outstanding balance of the Loans under the DIP Loan Agreement, with a corresponding permanent reduction of the Total Commitment (as defined in the DIP Loan Agreement) in the amount of such payment; (iii) third, to the then outstanding balance of the revolving loans under the Prepetition Credit Agreement;

and (iv) fourth, held as cash collateral in accordance with Section 8.5 of the DIP Loan Agreement.

7. <u>Authorization to Use Cash Collateral</u>. The Debtors are hereby authorized to use Cash Collateral, in accordance with the terms and conditions of this Interim Order, until the occurrence of the Maturity Date (as defined in the DIP Loan Agreement), or upon the occurrence of a Termination Event and the giving of the Remedies Notice (each as defined herein), subject to the provisions of paragraph 23(b) below.

8. <u>Budget Limitations on Loans and Cash Collateral Usage</u>. Subject to the terms and <u>conditions</u> set forth herein and in the DIP Financing Documents, the Debtors are authorized to borrow and obtain Loans and use Cash Collateral up to the amounts set forth in the Budget attached to the Motion as Exhibit 6a (the "**Original Budget**"), which the DIP Lenders have approved, subject to the provisions of the DIP Financing Documents and this Interim Order, through the earliest to occur of (the "**Interim Period**"): (a) the date of entry of the Final Order, and (b) the occurrence of a Termination Event (as defined below). The Original Budget reflects on a line-item thirteen (13) week rolling-basis the Debtors' anticipated aggregate cash receipts and aggregate necessary and required expenses for each week covered by the Original Budget. Subject to the terms of Section 5.32 of the DIP Loan Agreement, the Borrowers shall not have a ten percent (10%) or

greater unfavorable cumulative net cash flow variance when compared to the Original Budget and/or any subsequent budget at any time following the Petition Date measured for each one-week period covered by the Original Budget and any subsequent budget. The Debtors shall provide the DIP Lenders, Prepetition Lenders, the U.S. Trustee, and any Committee, so as to actually be received by 12:00 p.m. (Eastern Time) on Thursday following the end of each week, with a rolling, updated 13-week budget (the "**Rolling Budget**") (in substantially the same form as the Original Budget), which Rolling Budget shall be satisfactory in form and substance to the DIP Lenders. The Debtors shall also provide the DIP Lenders, Prepetition Lenders, the U.S. Trustee, and any Committee, so as to actually be received by 12:00 p.m. (Eastern Time) on Thursday of each week, with a line-by-line variance report for the immediately preceding one-week period and on a cumulative basis from the Petition Date to the report date (each a "**Variance Report**") showing the actual amounts attributable to each line item in the Original Budget or Rolling Budget, as the case may be, for such "look back" period together with an explanation for such variance, which Variance Report shall be satisfactory in form and substance to the DIP Lenders. The Original Budget and each subsequent Rolling Budget may be amended from time to time without further notice to any parties in interest in these Cases or further order of this Court upon the prior written agreement of the Debtors and DIP Lenders, and the amended budget shall become the Original Budget or

applicable Rolling Budget under the DIP Financing Documents and this Interim Order.

9. <u>DIP Lenders' Superpriority Claim</u>. For any and all obligations of the Debtors to the DIP Agent or the DIP Lenders under and pursuant to the DIP Credit Facility (the "**Postpetition Obligations**"), and in addition to the rights granted below, subject to the Carve-Out, the DIP Agent and the DIP Lenders are hereby granted an allowed superpriority administrative claim (the "**DIP Superpriority Claims**") in accordance with section 364(c)(1) of the Bankruptcy Code, having a priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtors (including, but not limited to, the Prepetition Obligations, which for avoidance of doubt are not entitled to treatment as an ordinary or superpriority administrative claim except to the extent of any Adequate Protection Claim, as defined below, for diminution in value or as adequate protection for priming by the DIP Credit Facility), now in existence or hereafter incurred by the Debtors and over any and all administrative expenses or priority claims of any kind including as specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726(b) (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, whether arising in the Cases or in any superseding chapter 7 case concerning the Debtors ("**Successor Case**"). The DIP Superpriority Claims shall be payable from and have recourse to

all prepetition and postpetition property of the Debtors and all proceeds thereof. Subject to entry of the Final Order, the DIP Superpriority Claim shall include Avoidance Actions and the proceeds of Avoidance Actions.

10. <u>Postpetition DIP Liens</u>.  As security for the Postpetition Obligations, immediately effective and perfected upon the date of this Interim Order and without the necessity of the execution, recordation or filings of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the DIP Liens set forth below (the "**DIP Liens**") are hereby granted to the DIP Agent for the benefit of the DIP Lenders on all of the following property, whether existing on the Petition Date or thereafter acquired, as more fully set forth in the DIP Financing Documents (collectively, the "Collateral"):

(i)    the Prepetition Collateral;

(ii)    all instruments and documents evidencing any of the Prepetition Collateral;

(iii)    all cash and Cash Collateral of the Debtors and any investment of such cash and Cash Collateral;

(iv)    all supporting obligations and payment intangibles in respect of any of the foregoing;

(v)    all books and records pertaining to any of the foregoing;

(vi)    all proceeds and products of any of the foregoing;

(viii)   all collateral, security and guarantees given by any person or entity with respect to any of the foregoing;

(ix)   to the extent not included above, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, chattel paper, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, all property purportedly assigned or pledged as collateral by the Debtors (or on behalf of the Debtors) to secure any intercompany obligations to the extent any such assignment or pledge shall not have been duly perfected as of the Petition Date and the proceeds and products of all the foregoing; and

(x)   all other prepetition and postpetition property and assets as set forth in the DIP Financing Documents, the Prepetition Credit Agreement or otherwise, whether existing on the Petition Date or thereafter acquired, including without limitation, subject to entry of the Final Order, Avoidance Actions (as defined in the DIP Loan Agreement) and the proceeds of Avoidance Actions.

(a)  <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Agent is hereby granted and shall have a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon any and all Collateral that is not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code.

(b)  <u>Junior Lien</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Agent is hereby granted and shall have a valid, binding, continuing, enforceable, fully-perfected best available junior priority senior security interest in and lien upon any and all Collateral that is subject to a valid, perfected, non-avoidable and enforceable lien in existence as of the Petition Date (other than the Prepetition Liens and Tesla Liens) or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code.

(c)  <u>Priming Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Agent is hereby granted and shall have a valid, binding, continuing, enforceable, fully-perfected first priority, priming senior security interest in and lien upon all Collateral that is subject to the Prepetition Liens and Tesla Liens securing the Prepetition Obligations and Tesla Obligations, respectively, and all other

security interests and liens on the Collateral (other than the DIP Liens of the DIP Agent), except with respect to any valid, perfected and unavoidable interests in such property arising out of liens to which the holders of Prepetition Liens become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens granted to the DIP Agent shall be senior to and shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, or (ii) subject to applicable law, any liens arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other than as expressly permitted under the DIP Financing Documents. The DIP Liens are subject only to the Carve-Out. The Prepetition Collateral and the Postpetition Collateral are collectively referred to herein as the "**Collateral**".

11. Adequate Protection of Prepetition Lenders' Interests.  In this Interim Order, the term "**Replacement Lien**" shall mean that, subject to the terms and conditions set forth in this Interim Order, the Prepetition Agent on behalf of the Prepetition Lenders shall have and is hereby granted (effective upon the date of this Interim Order and without the necessity of the Debtors or the Prepetition Agent's

execution of mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing statements or otherwise), valid and perfected, security interests in, and liens upon the Collateral, in the same priority and to the same extent, priority, enforceability, unavoidability and validity applicable to the Prepetition Liens in the Prepetition Collateral, which Replacement Liens shall have the priority set forth herein. The Prepetition Lenders are granted the following adequate protection postpetition claims for any diminution in the value of their respective interests in the Prepetition Collateral from the Petition Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Prepetition Collateral by the Debtors, and (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "**Adequate Protection Claim**"):

(i) The Prepetition Agent on behalf of the Prepetition Lenders shall have and is hereby granted the Replacement Liens subject to (a) unavoidable, duly perfected liens existing as of the Petition Date, and (b) the priorities set forth in this subsection. Subject to the foregoing, the Replacement Liens granted to the Prepetition Agent pursuant to this Interim Order shall be (x) *prior and senior* to (i) all liens and encumbrances (other than fees arising under 28. U.S.C. §1930) of all other secured creditors in and to such property granted, or arising, subsequent to the date of this Interim Order, and (ii) any security interest or lien that is avoided or

otherwise preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code, and (y) junior and subordinate to the Carve-Out and the DIP Liens granted to the DIP Agent, to which the Replacement Liens shall be immediately junior and subordinate;

(ii)    Subject to the priorities set forth below in this subsection, pursuant to section 364(c)(1) of the Bankruptcy Code, the claims of the Prepetition Lenders for any diminution in the value of their interests in the Prepetition Collateral from the Petition Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Prepetition Collateral by the Debtors, and (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code shall constitute allowed claims against the Debtors with priority over all administrative expenses (other than any fees arising under 28 U.C.S. §1930), diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (collectively, the "**Prepetition Lenders 507(b) Claims**"), whether or not such expenses or claims may become secured by judgment lien or other non-consensual lien, levy, or attachment or otherwise, which allowed

Prepetition Lenders 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof; provided, however, that the Prepetition Lenders 507(b) Claims granted to Prepetition Lenders shall be junior and subordinate to the Carve-Out and the DIP Superpriority Claims;

(iii)   All payments of accounts for inventory sold in the ordinary course of business will be applied to the Revolving Note (as defined in the Prepetition Credit Agreement) until paid in full, and thereafter to the Revolving Credit Note (as defined in the DIP Loan Agreement);

(iv)   Notwithstanding any provision of this Interim Order or the Prepetition Loan Documents to the contrary, the Prepetition Lenders reserve, and this Interim Order is without prejudice to, their rights to, among other things, seek additional adequate protection; provided that any adequate protection provided hereafter shall be junior and subordinate to the DIP Liens, the Carve-Out and DIP Superpriority Claims;

(iv)   As further adequate protection, the Debtors are hereby directed to immediately transfer to the Agent the 363 Sale Proceeds, whether received by the Debtors at closing of the 363 Sale Transaction or thereafter which shall be paid to the Lenders (including the Prepetition Lenders) in the order of priority set forth in the DIP Loan Agreement; and

(v)     Subject to and in accordance with the Original Budget or Rolling Budget, as the case may be, the Prepetition Lenders shall receive payment of interest on the Prepetition Obligations. Interest on the Prepetition Obligations shall be payable monthly on the first day of each month. In addition, the Prepetition Lenders shall receive monthly principal payments on the Prepetition Term Loans (as defined in the DIP Loan Agreement), which shall be payable on the first day of each month in the amounts set forth in the Prepetition Loan Documents.

12. Adequate Protection of Tesla's Interests.  In this Interim Order, the term "**Tesla Replacement Lien**" shall mean that, subject to the terms and conditions set forth in this Interim Order, Tesla shall have and is hereby granted (effective upon the date of this Interim Order and without the necessity of the Debtors or Tesla's execution of mortgages, deeds of trust, security agreements, pledge agreements, control agreements, financing statements or otherwise), valid and perfected, security interests in, and liens upon the Collateral, in the same priority and to the same extent, priority, enforceability, unavoidability and validity applicable to the Tesla Liens in the Tesla Collateral, which Tesla Replacement Liens shall have the priority set forth herein. Tesla is granted the following adequate protection postpetition claims for any diminution in the value of its interests in the Tesla Collateral from the Petition Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Tesla Collateral by the Debtors,

and (b) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "**Tesla Adequate Protection Claim**"):

(i)     Tesla shall have and is hereby granted the Tesla Replacement Lien subject to (a) unavoidable, duly perfected liens existing as of the Petition Date, and (b) the priorities set forth in this subsection.  Subject to the foregoing, the Tesla Replacement Liens granted to Tesla pursuant to this Interim Order shall be (x) junior and subordinate to the Carve-Out and the DIP Liens granted to the DIP Agent, as well as the Prepetition Liens and the Replacement Lien in favor of the Prepetition Agent on behalf of the Prepetition Lenders, to which the Tesla Replacement Liens shall be immediately junior and subordinate, and (y) *prior and senior* to (i) all other liens and encumbrances (other than fees arising under 28. U.S.C. §1930) of all other secured creditors in and to such property granted, or arising, subsequent to the date of this Interim Order, and (ii) any security interest or lien that is avoided or otherwise preserved for the benefit of the Debtors' estates pursuant to section 551 of the Bankruptcy Code;

(ii)     Subject to the priorities set forth below in this subsection, pursuant to section 364(c)(1) of the Bankruptcy Code, the claims of Tesla for any diminution in the value of its interests in the Tesla Collateral from the Petition Date resulting from (a) the use, sale, lease, disposition, shrinkage, decline in market value, consumption or physical deterioration of the Tesla Collateral by the Debtors, and (b)

the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code shall constitute allowed claims against the Debtors with priority over all administrative expenses (other than any fees arising under 28 U.C.S. §1930), diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (collectively, the "**Tesla 507(b) Claims**"), whether or not such expenses or claims may become secured by judgment lien or other non-consensual lien, levy, or attachment or otherwise, which allowed Tesla 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof; provided, however, that the Tesla 507(b) Claims shall be junior and subordinate to the Carve-Out, the DIP Superpriority Claims and the Prepetition Lenders 507(b) Claims.

13. Carve-Out. Upon the occurrence (the "**Carve-Out Event**") of the earlier of (a) the Debtors' receipt of a Remedies Notice (as such term is defined below) and (b) the Maturity Date (as defined in the DIP Loan Agreement), to the extent unencumbered funds are not available to pay administrative expenses in full, the DIP Liens, DIP Superpriority Claims, Adequate Protection Claim, Tesla

Adequate Protection Claim, Prepetition Lenders 507(b) Claims, Tesla 507(b) Claims, Replacement Lien, and Tesla Replacement Lien shall be subject to the payment of (x) the aggregate amount of any budgeted and unpaid fees, costs and expenses that were accrued or incurred prior to the Carve-Out Event by the professionals retained by the Debtors and any professionals retained by the Committee that are in accordance with the Original Budget or applicable Rolling Budget (collectively, the "**Professionals**") to the extent allowed by an order of this Court (the "**Budgeted Professional Fees**"), plus (y) those fees, costs and expenses incurred by the Professionals after the Carve-Out Event and subsequently allowed by order of this Court, subject to the Original Budget or applicable Rolling Budget, in an amount not to exceed $75,000 in the aggregate, plus (z) fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930 (collectively, the "**Carve-Out**"); provided that, to the extent that the fees, costs and expenses accrued or incurred for any Professional line item in the Original Budget or applicable Rolling Budget as of the date on which a Carve-Out Event has occurred are less than the Budgeted Professional Fees for such Professional(s) (the amount of any such excess for any such Professional is referred to herein as an "Excess Carve-Out"), all other Professionals (in addition to their right to payment in clause (x) above) will share pro-rata in each such Excess Carve-Out; provided, further, that in no event shall the fees, costs and expenses payable to the Committee's Professionals

pursuant to this paragraph 13 at any time exceed $100,000.00 in the aggregate; provided further that following a Carve-Out Event any amounts actually paid to Professionals by any means will reduce the Carve-Out on a dollar-for-dollar basis; and provided, further, that no portion of the Carve-Out, DIP Credit Facility, Collateral, Prepetition Collateral or Cash Collateral shall include, apply to, or be available for any fees, costs or expenses incurred by any party, including the Debtors or any Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any DIP Lenders or the Prepetition Lenders, including, without limitation, (a) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Postpetition Obligations, DIP Superpriority Claims or DIP Liens, in respect thereof, (b) challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Obligations, Prepetition Lenders 507(b) Claims, Replacement Liens, or Prepetition Liens in respect thereof or (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Agent's or DIP Lenders' assertion, enforcement or realization on the Collateral in accordance with the DIP Financing Documents or this Interim Order; provided, further, however, that no more than $20,000.00 of the proceeds of the DIP Credit Facility or any proceeds of the Collateral may be used to fund a

reasonable investigation by the Committee into the existence of any causes of action or other type of litigation against the Prepetition Lenders with respect to the Prepetition Obligations. Notwithstanding the foregoing, so long as a Carve-Out Event has not occurred the Debtors shall be permitted to pay, subject to and in accordance with the Budget, administrative expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may become due and payable. In the event of a liquidation of the Debtors' estates, an amount equal to the Carve-Out shall be reserved from the proceeds of such liquidation, or from cash held in the estate at such time, with such proceeds or cash to be held in a segregated account, prior to the making of any distributions. Nothing contained herein is intended to constitute, nor should be construed as consent to, the allowance of any Professional's fees, costs or expenses by any party and shall not affect the right of the Debtors, the DIP Lenders, the Prepetition Lenders, the Committee, the U.S. Trustee, or any other party-in-interest to object to the allowance and payment of any amounts incurred or requested. Furthermore, none of the Carve-Out, Collateral, Prepetition Collateral, Cash Collateral or any proceeds of the DIP Credit Facility shall be used to prevent, hinder or delay the DIP Agent or the DIP Lenders from enforcing or realizing upon the Collateral once an Event of Default has been determined by the Court to have occurred and to be continuing under the DIP Financing Documents or this Interim Order.

14.     <u>No Surcharge or Marshaling</u>.  Subject to approval at the Final Hearing, neither the Collateral nor the Lenders shall be subject to surcharge, pursuant to section 506(c) of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any party, including but not limited to funding of the Debtors' ongoing operations by the Lenders.  Subject to approval at the Final Hearing, the Lenders shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

15.     <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.  Nothing in this Interim Order shall prejudice the rights of any party in interest other than the Debtors to object to or challenge the Debtors' Stipulations; *provided however,* that unless such other party in interest obtains proper standing and commences a contested matter or adversary proceeding raising such objection or challenge, including, without limitation, any claim or cause of action against the Prepetition Lenders objecting to the Prepetition Liens or in the nature of a setoff, counterclaim or defense to the Prepetition Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Prepetition Lenders) within 30 days from the entry of this Interim Order (the **"Challenge Period"**, in the event that no contested matter or

adversary proceeding is commenced during the Challenge Period shall be referred to as the **"Challenge Period Termination Date"**), then, upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any chapter 11 or chapter 7 trustee appointed in the Cases or in any Successor Case) shall be deemed to be forever waived, barred and discharged and the Debtors' Stipulations shall be binding on all persons, entities, creditors, interest holders and parties in interest in the Cases or any Successor Case, and upon the Challenge Termination Period the Prepetition Obligations and Prepetition Liens shall be deemed to be fully and finally allowed under the Bankruptcy Code for all purposes in connection with the Case and any Successor Case. Only those parties in interest that have properly and with requisite standing initiated an adversary proceeding or contested matter challenging the Debtors' Stipulations prior to the Challenge Period Termination Date shall be permitted to prosecute such adversary proceeding or contested matter. If any such Challenge is timely commenced within the Challenge Period, the agreements, stipulations and findings contained in this Interim Order shall nonetheless remain binding and preclusive on the Debtors and their estates and their creditors, the Committee, if any, equity holders, and all other parties in interest in these Cases, except to the extent that such findings or admissions are expressly and successfully challenged and the Court enters a final order with respect thereto.

16.     Limitation on Other Authorization for Cash Collateral Use, Obtaining Credit, Granting of Liens.  So long as there are any Postpetition Obligations outstanding to the DIP Lenders under the DIP Credit Facility and until the Prepetition Claims are satisfied indefeasibly in full, unless the Lenders shall have given their prior written consent, or this Court enters an order, upon proper notice to the Lenders and after hearing, requiring that all the Debtors' obligations to the DIP Lenders and the Prepetition Lenders be immediately satisfied in full, the Debtors shall neither seek any further orders in the Cases, nor support any applications therefor, which authorize: (a) under Bankruptcy Code section 363, the use of Cash Collateral or the sale, use, or lease, other than in the ordinary course of business, of other property of the Debtors in which the DIP Agent or the Prepetition Agent have an interest; or (b) the obtaining of credit or the incurring of indebtedness pursuant to Bankruptcy Code section 364(c) or (d), or any other grant of rights against the Debtors and/or their estates secured by a lien, mortgage or security interest in the Prepetition Collateral or the Postpetition Collateral or entitled to priority administrative status which is equal or superior to that granted to the DIP Agent, the DIP Lenders or the Prepetition Agent or the Prepetition Lenders (with respect to the Replacement Liens) herein.

17.     Insurance; Governmental Charges.  The Debtors, at their expense, shall (a) continue to at all times keep the Collateral fully insured against all loss, peril and

hazard and make the DIP Agent and the Prepetition Agent co-insured and loss payee as their interests appear under such policies, and (b) pay any and all postpetition taxes, assessments and governmental charges with respect to the Collateral, whether or not the Debtors are obligated to do so under the Prepetition Loan Documents, and will provide the DIP Lenders or the Prepetition Lenders with proof thereof upon written demand and will give the DIP Lenders and the Prepetition Lenders access to their records in this regard.

18.    <u>Modification of Automatic Stay</u>.  The automatic stay provisions of Bankruptcy Code section 362 are hereby vacated and modified to permit (a) the Debtors to implement the terms of the DIP Credit Facility, (b) the Debtors to grant the Replacement Liens and Tesla Replacement Liens as adequate protection to the Prepetition Lenders and Tesla, respectively, and (c) the Debtors to create, and the DIP Agent or the Prepetition Agent as the case may be, to perfect, any and all liens, mortgagees and security interests granted to them hereunder; *provided, however,* that neither the DIP Agent nor the Prepetition Agent shall be required to file UCC financing statements or other instruments with any other filing authority to perfect any lien, mortgage or security interest granted by this Interim Order or take any other action to perfect such liens, mortgages and security interests, and such liens, mortgages and security interests are hereby deemed perfected; *provided, however,* that if the DIP Agent or the Prepetition Agent, as the case may be, shall, in their sole

discretion, elect for any reason to file, record or serve any such financing statements or other documents with respect to such liens and security interests, the Debtors shall execute the same upon request, without any further notice to or consent of any party or this Court, and the filing, recording or service thereof (as the case may be) shall be deemed to have been made at the time and on the date required to implement the priority of such liens and security interests as provided in this Interim Order. A certified copy of this Interim Order may be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and recording.

19.     <u>Section 552(b).</u>     Subject to entry of the Final Order, the DIP Lenders and the Prepetition Lenders are entitled to all of the rights and benefits of section 552(b)(1) of the Bankruptcy Code and the "equities of the case' exception therein shall not apply.

20.     <u>No Impairment by Plan</u>.     The time of payment of any and all Postpetition Obligations of the Debtors arising out of or incurred pursuant to the DIP Credit Facility shall not be altered, extended or impaired by any plan or plans of reorganization that may hereafter be accepted or confirmed or any further orders of the Court which may hereafter be entered.

21.    <u>Exclusivity</u>.  Debtors agree that they shall not seek any extension of the exclusivity periods set forth in §§ 1121(b) and 1121(c) of the Bankruptcy Code without the express written consent of Agents, which consent Agents may withhold in their sole discretion.  Debtors agree that the intent of the foregoing sentence is to prohibit any extensions of the exclusivity periods unless Agents, in their sole discretion, consent in writing to any such extensions.  Debtors and all parties receiving notice of this Interim Order shall have no claim, cause of action or defense on account of Agents' exercise of the foregoing rights.

22.    <u>Termination Events</u>.  The occurrence of any one or more of the following events shall constitute a "**Termination Event**" under this Interim Order:

(a)    any of the Cases are either dismissed or converted to a case under chapter 7 of the Bankruptcy Code or if venue of any of the Cases is transferred to another district;

(b)    a trustee or an examiner with expanded powers is appointed in any of the Cases;

(c)    any plan(s) of reorganization of the Debtors is filed without the consent of the DIP Lenders which does not provide for the payment in full in cash of the Postpetition Obligations upon the effective date of the plan(s);

(d)     the Debtors cease operation of their businesses or take any material action for the purpose of effecting such cessation without the prior written consent of the Lenders;

(e)     this Interim Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall materially adversely affect the rights of either of the Lenders hereunder or shall materially and adversely affect the priority of any or all of the claims, liens or security interests granted for the benefit of either of the Lenders and which is not acceptable to the Lenders, in their discretion;

(f)     the final order approving debtor-in-possession financing from the DIP Lenders and/or the use of Cash Collateral, which final order shall be in form and substance satisfactory in all respects to the Lenders (the "**Final Order**"), is not entered on or before twenty (20) days after the Petition Date;

(g)     the Debtors' failure to comply with or perform, in any material respect, the terms and provisions of this Interim Order or any DIP Financing Document, including, without limitation, using Loans or Cash Collateral other than in accordance with the provisions of this Interim Order and the Budget;

(h)     any sale or other disposition of Collateral or Cash Collateral is approved without the consent of the DIP Lenders or the Prepetition Lenders;

(i)     any superpriority claim or lien equal or superior in priority to that granted to the DIP Lenders or the Prepetition Lenders pursuant to this Interim Order or permitted hereunder shall be granted;

(j)     the automatic stay of Bankruptcy Code section 362 is lifted so as to allow a party other than the Lenders to proceed against any material asset of the Debtors;

(k)     the Debtors shall have filed, or the Court shall have entered an order confirming, a plan of reorganization, which plan is not in form and substance acceptable to the DIP Lenders or the Prepetition Lenders;

(l)     the sale milestones set forth in the Motion as Exhibit 6c shall not have been met within the period specified therefor, as the same may be extended in the sole discretion of the Lenders; or

(m)     the termination of the Term of the Accommodation Agreement.

23.     <u>Remedies Upon Maturity/Termination</u>.

Upon the occurrence of the Maturity Date, or upon the occurrence of a Termination Event and the giving of the Remedies Notice (as defined below):

(a)     any and all Postpetition Obligations shall be immediately due and payable, any obligation of the DIP Lenders to make Loans or other financial accommodations under the DIP Credit Facility shall terminate, and the Debtors' authorization to use Cash Collateral, including any amounts in any and all deposit

accounts maintained by the Debtors, shall terminate), subject to paragraph 23(b) below;

(b)     the Debtors shall immediately segregate all Cash Collateral, and shall not be permitted to use Cash Collateral unless the Lenders shall have given their prior written consent or the Court shall have entered an order, after a hearing upon notice to the Lenders, authorizing such use;

(c)     the Accommodating Customers, Lenders, the DIP Agent and the Prepetition Agent shall have the right, free of the restrictions of Bankruptcy Code section 362, (i) to take immediate reasonable action to protect and preserve the Collateral, and (ii) after giving five (5) business days' prior written notice of a Termination Event to the Debtors, the Office of the United States Trustee, and the Committee (the "**Remedies Notice**"), to exercise their rights and remedies pursuant to the DIP Financing Documents, the Prepetition Loan Documents, the Accommodation Agreement, the Access Agreement and/or applicable law, including, without limitation, to foreclose on all or any portion of the Collateral, collect accounts receivable and other monies owing to the Debtors and apply the proceeds thereof in satisfaction of the Postpetition Obligations and the Prepetition Obligations, resource, or exercise rights of setoff, unless, prior to the passage of such five (5) business days, the Court shall have entered an order, after a hearing upon

notice to the Lenders, limiting or restraining the Lenders, the DIP Agent and the Prepetition Agent from exercising any or all such rights and remedies; and

(d)     the Debtors, to the fullest extent allowed under applicable law, waive all notices that the Lenders, the DIP Agent or the Prepetition Agent might be required to give but for this waiver, including any notices otherwise required under Article 9 of the Uniform Commercial Code as enacted in the State of Michigan, the State of Ohio, or any other relevant state (the "UCC") concerning the Collateral. Furthermore, Debtors waive (i) the right to notification of disposition of the Collateral under § 9-611 of the UCC, (ii) the right to require disposition of the Collateral under § 9-620(e) of the UCC and (iii) all rights to redeem any of the Collateral under § 9-623 of the UCC.

24.     <u>No Limitation on Further Relief</u>.  Nothing in this Interim Order shall limit the rights of the Lenders to seek further relief (including additional adequate protection), or modification or termination of the automatic stay in accordance with Bankruptcy Code section 362(d).

25.     <u>No Limitation on Assignment of Rights</u>.  Nothing in this Interim Order shall limit the rights of the Lenders to assign any or all of their rights, claims and obligations under the DIP Financing Documents or the Prepetition Loan Documents (as applicable).

26. <u>Books and Records</u>. The Debtors are directed to keep their books and records of original entry current and updated, so that all business activity is posted to them in the ordinary course of the Debtors' businesses.

27. <u>Good Faith</u>. Pursuant to, and to the extent of, the provisions of Bankruptcy Code section 364(e), the validity of the Postpetition Obligations and the validity or priority of the liens, mortgages and security interests authorized or granted by this Interim Order shall be binding on the Debtors, their estates and their successors and assigns even if this Interim Order is reversed or modified on appeal.

28. <u>Additional Documents</u>. The Debtors are hereby authorized to do and perform all acts and to make, execute and deliver all instruments and documents which may be required or necessary for the performance of their obligations hereunder and under the DIP Credit Facility.

29. <u>Immediate Effect</u>. As permitted by Bankruptcy Rule 6004(h), the Court hereby orders that this Interim Order shall become effective immediately.

30. <u>Survival After Confirmation, Conversion or Dismissal</u>. The provisions of this Interim Order and any actions taken pursuant thereto shall survive entry of any orders which may be entered confirming any plan of reorganization or which may be entered converting the Cases from chapter 11 to chapter 7 of the Bankruptcy Code; *provided, further,* that the terms and provisions of this Interim Order, as well as the liens, mortgages and security interests granted thereunder, shall continue in

the Cases or any Successor Case and such liens, mortgages and security interests and the Adequate Protection Claim and Tesla Adequate Protection Claim shall maintain their priority as provided by this Interim Order.

31.   No Limitation of Modification of Order.  Nothing in this Interim Order shall limit the Lenders' rights to seek modification of this Interim Order.

32.   No Prejudice of Rights Against Third Parties.  Nothing in this Interim Order shall in any way prejudice or compromise any rights that the Lenders may have against parties other than the Debtors.

33.   Accommodating Customers' Rights. Notwithstanding anything to the contrary herein, subject to the terms of the Accommodation Agreement (including the limitation on setoffs, inventory purchase obligations, and other covenants and restrictions for the benefit of the Lending Group), any liens, setoffs, recoupments, or security interests existing by and between any Debtor and any of the Accommodating Customers (and any affiliates of the foregoing), if any, shall not be affected, altered, amended, primed, subordinated, waived, deleted, and/or changed in any way, and shall remain in full force to the same extent and in the priority in which they existed immediately before the filing of these chapter 11 cases.

34.   Loan Amounts under the Interim Order.  Notwithstanding anything else to the contrary, the Debtor may not borrow more than $8,800,000.00 before this

Interim Order becomes a final order. That amount is necessary to avoid immediate and irreparable harm.

35.     Service of this Interim Order.  Within 24 hours after the entry of this Interim Order, the Debtors shall serve a copy under Federal Rule of Bankruptcy Procedure 4001(d) and Local Rule 4001-2 on: (a) the Office of the United States Trustee; (b) the Internal Revenue Service; (c) all state and local taxing authorities concerning the Debtors; (d) counsel to any Committee, if any; (e) the creditors holding the twenty (20) largest unsecured claims against the Debtors' estate; (f) counsel to the Lenders; (g) GM, Toyota, BMW, and Tesla, and (f) all other creditors with UCC filings against the Debtors.

36.     Objection.  Any objection to the relief requested in the Motion on a permanent basis must: (a) be filed in accordance with the Court's CM/ECF procedures by 4:00 p.m. (Eastern Time) on the date that is fourteen (14) days from the date of entry of this Interim Order, except that an official committee may file objections within fourteen (14) days after it is served with the entered Interim Order (the "**Objection Deadline**"), and (b) served so as to be actually received by the following parties by the Objection Deadline: (i) the United States Trustee, 211 W. Fort St., Suite 700, Detroit, MI 48226; (ii) counsel to the Debtors, Scott A. Wolfson, Wolfson Bolton PLLC, 3150 Livernois, Suite 275, Troy, Michigan 48083; (iii) counsel to the Lenders, McDonald Hopkins LLC, 600 Superior Ave. E, Suite 2100,

Cleveland, Ohio 44114, Attn: Scott Opincar, and Robert J. Diehl, Jr., Bodman PLC, 1901 St. Antoine Street, 6th Floor at Ford Field, Detroit, MI 48226; (iv) counsel to GM, E. Todd Sable, Honigman LLP, 2290 First National Building, 660 Woodward Avenue, Detroit, MI 48226-3506; (v) counsel to Toyota, Patricia Kirkwood Burgess, Frost Brown Todd LLC, The Pinnacle at Symphony Place, 150 3rd Avenue South, Suite 1900, Nashville, TN 37201; (vii) counsel to BMW, Richard Kruger, Jaffe Raitt Heuer Weiss, P.C., 27777 Franklin Road, Suite 2500, Southfield, Michigan, 48034; (viii) counsel to Tesla, Eric Goldberg, DLA Piper LLP (US), 200 Avenue of the Stars, Suite 400, North Tower, Los Angeles, California 90067-4735; and (ix) counsel to any Committee then appointed in the Cases. The final hearing on the Motion (the "**Final Hearing**") shall be on _____, 2022 at __:__ _.M., Eastern Time. This Interim Order shall remain in effect until the Final Hearing. If an objection is timely filed by the Objection Deadline the Final Hearing will be held, and if no objection is timely filed by the Objection Deadline, the Interim Order may become a final order.

37. <u>Binding Effect</u>. The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lenders, the Debtors, the Debtors' estates, and all creditors and parties in interest, and their respective successors and assigns (including any trustee appointed as a representative of the Debtors' estates or in any Successor Case). If any or all of the provisions of this Interim Order are hereafter

modified, vacated or stayed by subsequent order of this or any other court, such stay, modification or vacation shall not affect: (a) the validity of any debt to Lenders incurred under this Interim Order and which is incurred prior to the effective date of such stay, modification or vacation; (b) the validity and enforceability of any lien or priority authorized hereby with respect to any such debt to Lenders; or (c) the conduct of Agents or Lenders with respect to the rights granted to Agents and Lenders in this Interim Order prior to the effective date of such stay, modification or vacation, and notwithstanding such stay, modification or vacation, all amounts owed to Agents and Lenders by Debtors under this Interim Order prior to the effective date of such modification, stay or vacation, shall be governed in all respects by the original provisions of this Interim Order and Agents and Lenders shall be entitled to all the rights, privileges and benefits, including the security interests and priorities granted herein, with respect to all such advances and the course of conduct established in connection therewith.

38. <u>Controlling Effect</u>. To the extent that any provision of this Interim Order conflicts with any provision of any of the Prepetition Loan Documents or any of the DIP Financing Documents, this Interim Order is deemed to control and shall supersede the conflicting provision(s).

Dated: _____, 2022
Detroit, Michigan


_____
UNITED STATES BANKRUPTCY JUDGE